***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. M.J. Soffe Co., Inc. was insured at the time of the January 2, 2002, April 29, 2002 and May 19, 2003 injuries, and The PMA Insurance Group was the carrier for Defendant-Employer.
3. On January 2, 2002, April 29, 2002 and May 19, 2003, Plaintiff was employed by Defendant-Employer as an elastic machine operator. She was employed by Defendant-Employer from September 9, 2000 through May 27, 2003.
4. On or about January 2, 2002 and April 29, 2002, Plaintiff sustained admittedly compensable injuries to her left wrist, hand and arm when she accidentally struck her left wrist on the stacker arm of the elastic machine. On May 19, 2003, Plaintiff sustained an admittedly compensable aggravation of her pre-existing left wrist, hand and arm injury when she picked up a box of elastic.
5. Plaintiff is 65 years old with an 11th grade education.
6. Defendants are currently paying temporary total benefits pursuant to a Form 62 dated July 22, 2003.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms and filings
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Payment record *Page 3 
Transcripts of depositions of the following were also received post-hearing:
 • Dr. Glen Subin
 • Dr. Thomas Kern Carlton, III
 *********** EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and the opinion in this Opinion and Award.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On April 29, 2002, Plaintiff was initially seen for her compensable injuries at U.S. Healthworks. She presented with complaints of left wrist pain after she struck the radial aspect of the wrist while at work. She was diagnosed with left wrist tenosynovitis. At U.S. Healthworks, Plaintiff had an orthopedic consultation and underwent a recommended injection. Plaintiff was discharged from U.S. Healthworks on July 20, 2002.
2. Plaintiff later treated with Cape Fear Orthopedic Clinic.
3. Plaintiff had an MRI on November 8, 2002, which revealed minimal synovial proliferation over the area of the extensor digitorum communis at the wrist. The MRI also revealed some areas of increased synovium in the Lister's tubercle. Additionally, a possible tear of the triangular fibrocartilage comples (TFCC) with slit perforation over the radial aspect was revealed. *Page 4 
4. On May 27, 2003, Plaintiff's left wrist was placed in a short arm cast. An x-ray on July 8, 2003 showed a crack of the radial styloid.
5. Plaintiff underwent a bone scan on July 21, 2003 which showed diffuse uptake throughout the carpals with suggestion of degenerative changes along the carpometacarpal (CMC) joint of the thumb and wrist joint. Plaintiff also underwent nerve conduction studies on July 21, 2003 which were normal.
6. Plaintiff presented to Dr. Subin, an orthopedic hand surgeon, upon Defendants' referral for an independent medical evaluation on October 23, 2003. Dr. Subin's impression was left wrist pain with arthritis with normal nerve conduction studies. He recommended a cock-up wrist splint at night and non-steroidal anti-inflammatory medications.
7. Plaintiff later sought treatment on her own with Dr. Richard Serano, a neurologist. He ordered an x-ray, which was performed on July 28, 2004. Dr. Serano believed Plaintiff may have reflex sympathetic dystrophy (RSD) in the left arm.
8. Plaintiff saw Dr. Subin on November 22, 2004 for an evaluation of the possibility of RSD. Dr. Subin opined that Plaintiff did not have the classic signs of RSD.
9. On December 6, 2005, Plaintiff presented to Dr. Carlton at The Rehab Center in Charlotte for further evaluation and treatment of her left arm pain. Dr. Carlton diagnosed Plaintiff with left wrist contusion, chronic pain syndrome of the left upper extremity, depression and possible CRPS Type 1. He prescribed Lidoderm patches.
10. On January 3, 2006, Dr. Carlton recommended an MRI and prescribed additional Lidoderm patches, based on Plaintiff's report that they helped relieve her pain.
11. Plaintiff underwent the MRI on January 3, 2006. The MRI scan was abnormal, revealing significant joint effusion, which is swelling or fluid accumulation in the joint, an *Page 5 
irregularity where the triangular fibrocartilage attaches, sympathetic joint effusion, and mild paratendinous tenosynovial enhancement.
12. Plaintiff returned to Dr. Carlton on January 16, 2006, and, based on the MRI findings, he referred Plaintiff for evaluation for possible surgery. Plaintiff again saw Dr. Carlton on March 3, 2006, whereupon he renewed the Lidoderm patch prescription, noted that Plaintiff did not have the usual signs of CRPS, and repeated the hand surgeon referral.
13. On March 22, 2006, Plaintiff returned to Dr. Subin for evaluation for possible surgery. Dr. Subin reviewed the January 3, 2006 MRI results and did not feel surgery was indicated. He recommended that Plaintiff continue to treat with Dr. Carlton for pain management.
14. Following the March 22, 2006 recommendation by Dr. Subin, Defendants did not authorize Plaintiff to return to Dr. Carlton or any other provider for pain management.
15. Plaintiff last saw Dr. Subin on May 25, 2007, again for an IME at Defendants' referral. Dr. Subin felt that Lidoderm patches would be reasonable for Plaintiff because she had gotten relief from them in the past. He also wrote a prescription for a cock-up splint for her left wrist.
16. As Dr. Carlton testified, Plaintiff suffers from chronic pain in her left upper extremity related to her compensable injuries. He recommends that Plaintiff continue with Lidoderm patches and that she obtain pain management. Dr. Subin also opined that Plaintiff suffers from chronic left wrist pain, and he continued to recommend as well that she receive pain management treatment.
17. At the hearing before the Deputy Commissioner, Plaintiff continued to have pain in her left wrist and hand and was experiencing muscle spasms that she described as "drawing" *Page 6 
of the thumb into the palm. She was not treating with any physician; however, she wears a brace and takes over-the-counter pain relievers to try to control her pain.
18. Defendants conceded that they would authorize pain management for Plaintiff, but argued that it had been unclear, until the post-hearing depositions, as to whether further pain management had been recommended by Drs. Carlton and Subin.
19. Dr. Carlton's March 2, 2006 office note clearly shows that he wanted Plaintiff to obtain a surgical consult. Plaintiff saw Dr. Subin, a hand surgeon, on March 22, 2006. Dr. Subin's office note from that date clearly shows that he did not believe surgery was indicated and that he was referring Plaintiff back to pain management with Dr. Carlton.
20. Based on the greater weight of the evidence, the Full Commission finds that further medical treatment for Plaintiff's compensable left upper extremity condition, specifically further Lidoderm patch prescriptions, pain management, and wrist splints, is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
21. Defendants have defended this matter without reasonable grounds, and their refusal, since March 22, 2006, to provide Plaintiff with pain management has constituted stubborn and unfounded litigiousness.
22. As Defendants brought this appeal, the Full Commission finds the award of attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88
to be reasonable. After review of plaintiff's affidavit and time records received into evidence after the hearing before the Full Commission, the Full Commission finds the fee of $2,239.81 related to the appeal to be reasonable.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained admittedly compensable injuries by accident arising out of and in the course of her employment on January 2, 2002, April 29, 2002, and May 19, 2003. As a result of Plaintiff's compensable injuries, Plaintiff is entitled to have Defendants provide medical treatment for her compensable left upper extremity condition that is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. Specifically, Plaintiff is entitled to have Defendants authorize and pay for further Lidoderm patch prescriptions, pain management, and wrist splints.
2. Defendants conceded that they would authorize pain management for Plaintiff. As Defendants have failed to provide pain management to plaintiff, in the face of clear directives from two physicians of their choice, the Commission, in its discretion, concludes that Plaintiff is entitled to select a pain management physician. N.C. Gen. Stat. § 97-25.
3. Defendants have defended this matter without reasonable grounds, and their refusal, since March 22, 2006, to provide Plaintiff with pain management has constituted stubborn and unfounded litigiousness. As such, Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
4. The appeal to the Full Commission was brought by the Defendants, and the Commission by this decision orders the Defendants to make, or to continue, payments of benefits, including compensation for medical expenses, to the injured employee. Therefore, pursuant to N.C. Gen. Stat. § 97-88, the Full Commission may award attorney's fees to Plaintiff to be taxed as part of the bill of costs. *Page 8 
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the limitations period set out in N.C. Gen. Stat. §97-25.1, Defendants shall provide Plaintiff with further medical treatment including but not limited to further Lidoderm patch prescriptions, pain management with a physician of Plaintiff's choice, and wrist splints.
2. The pain management specialist Plaintiff chooses shall be designated as Plaintiff's treating physician, and Defendants shall authorize and pay for the treatment that such physician recommends for Plaintiff's compensable injuries, including but not limited to prescriptions, diagnostic testing, referrals and mileage. Once Plaintiff notifies Defendant-Carrier of her choice for a pain management specialist, an intake appointment for Plaintiff with such physician shall be scheduled for the earliest feasible date.
3. Defendants shall pay to Plaintiff's counsel a reasonable attorney's fee in the amount of $2,239.81 pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay to Plaintiffs' counsel an attorney's fee in the amount of $6,060.00 and mileage reimbursement of $171.62, for total payment of $6,231.62, pursuant to N.C. Gen. Stat. § 97-88.1. Such fee shall be taxed as costs to the Defendants and shall not be deducted from any other sums due Plaintiff or Plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
This the 6th day of June, 2008. *Page 9 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER

 *Page 1